IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LUCAS DENNEY, <br>     PLAINTIFF, <br><br> VS. <br><br><br> CAROLYN W. COLVIN, <br> ACTING COMMISSIONER OF SOCIAL <br> SECURITY, <br>     DEFENDANT. | § <br> § <br> § <br> §  CIVIL ACTION NO. <br> §  4:12-CV-00565-Y <br> § <br> § <br> § <br> § <br> § |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.     STATEMENT OF THE CASE

Plaintiff Lucas Denney ("Denney") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act ("SSA").  In August 2007, Denney protectively filed his application, alleging that his disability began on May 15, 2006.  (Tr. 12, 241-45.)  His application for benefits was denied initially and on reconsideration.  (Tr. 12, 160-

1

64, 168-70.)  The ALJ held a hearing on August 22, 2008 and issued a decision on December 24,

2008, finding that Denney was not disabled.  (Tr. 12, 84-134, 137-55.)  The Appeals Council, on

July 24, 2009, vacated the ALJ's decision and remanded the case for further proceedings.[1]  (Tr.

12, 156-59.)  The ALJ held another hearing on November 12, 2009 and issued another decision

on February 8, 2011, finding that Denney was not disabled because he was capable of

performing jobs that existed in significant numbers in the national economy.  (Tr. 9-83.)  The

Appeals Council denied Denney's request for review, leaving the ALJ's decision to stand as the

final decision of the Commissioner.  (Tr. 1-6.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous

regulatory provisions.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically

determinable physical or mental impairment lasting at least twelve months that prevents the

claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A);

*McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is

disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §

404.1520.  First, the claimant must not be presently working at any substantial gainful activity.

Substantial gainful activity is defined as work activity involving the use of significant physical or

mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an

---

[1] The Appeals Council also noted that Denney filed a new Title II application on January 27, 2009 that was "technically denied by the local Social Security Office." (Tr. 159; *see* Tr. 12.) The Appeals Council instructed the ALJ to "associate the subsequent claims file, if available, with the current claims file and to render a decision on the associated claims." (Tr. 12; *see* Tr. 159.) In response, the ALJ stated that "there is no evidence that any medical records were generated in connection with the subsequent application" and "[i]f there is a claims file associated with the subsequent application, it is unavailable." (Tr. 12; *see* Tr. 159.)

2

impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.   ISSUES

In his brief, Denney presents the following issues:

1.   Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence;[2] and

2.   Whether the ALJ erred in rejecting the determination of disability made by the Department of Veterans Affairs ("VA").

(Plaintiff's Brief ("Pl.'s Br.") at 1, 9-15.)

## IV.   ALJ DECISION

In her February 8, 2011 decision, the ALJ found that Denney met the insured status requirements of the SSA through March 31, 2011 and had not engaged in any substantial gainful activity since May 15, 2006, the alleged date of Denney's onset of his disability. (Tr. 15.) The ALJ further found that Denney suffered from the following severe impairments: "costochondritis (from a rib injury), hearing loss (mild), post-traumatic stress disorder, and major depression." (Tr. 15.) Next, the ALJ held that none of Denney's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. at 16-18.) As to Denney's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform and maintain a limited

---

[2] In his brief, Denney divides this issue into three separate issues based on the opinions of several physicians. (Plaintiff's Brief ("Pl.'s Br. at 2.) Because all three issues are related and to make the analysis easier to understand, the Court will consider these issues as one issue but will address all of Plaintiff's various arguments relating to such issue.

range of sedentary work.[3]  Specifically, on a sustained basis, the claimant can lift
10 pounds at a time and can occasionally lift or carry articles such as docket files,
ledgers, and small tools; can walk/stand for 2 hours and sit for 6 hours during an
8-hour workday; can occasionally balance, stoop, kneel, crouch, crawl, and climb
ramps and stairs, but cannot climb ropes or ladders; and can perform simple
routine work not with the public.

(Tr. 18 (emphasis omitted) (footnote inserted).)  Next, the ALJ found that Denney was unable to

perform any of his past relevant work. (Tr. 29.)  However, considering Denney's age, education,

work experience, and RFC, the ALJ concluded, based upon the vocational expert's opinion that

there were jobs that existed in significant numbers in the national economy, that Denney was not

disabled. (Tr. 29-31.)

## V.   DISCUSSION

### A. RFC Determination

Denney argues, in essence, that the ALJ's mental RFC determination is not supported by

substantial evidence.  (Pl.'s Br. at 2, 10-19, 22-26.)  In support, Denney claims the following: (1)

the ALJ erred in giving weight to only parts of the opinion of Denney's treating psychiatrist, Lia

A. Thomas, M.D. ("Dr. Thomas") regarding Denney's mental ability to perform work activities

(Pl.'s Br. at 2, 10-18, 24); (2) the ALJ erred in stating that she was giving the opinion of Andrea

---

[3] Sedentary work is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as
one which involves sitting, a certain amount of walking and standing is often necessary in carrying
out job duties.  Jobs are sedentary if walking and standing are required occasionally and other
sedentary criteria are met.

20 C.F.R. § 404.1567(a).  To perform the full range of sedentary work, an individual must be able to
remain in a seated position for approximately six hours of an eight-hour workday and stand and walk for
approximately two hours of an eight-hour day. *See* Social Security Ruling ("SSR") 96-9p, 1996 WL
374185, at *6 (S.S.A. July 2, 1996).

Zartman, Ph.D. ("Dr. Zartman"), significant weight but then failed to incorporate any of the limitations found by Dr. Zartman into the RFC determination (Pl.'s Br. at 2, 18-19, 25-26); and (3) the ALJ's RFC determination is not supported by any evidence because there is no medical opinion that supports such opinion considering the "ALJ rejected the opinion of Dr. Thomas, failed to include limitations from Dr. Zartman, and Dr. David did not give functional limitations" (Pl.'s Br. at 2; *see* Pl.'s Br. at 22-23, 26-27.)

RFC is what an individual can still do despite his limitations.[4]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at 3-6.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan,* 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and

---

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart,* 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

In this case, the ALJ found that Denney had the RFC to perform a limited range of sedentary work in that Denney could "lift 10 pounds at a time, and can occasionally lift or carry articles such as docket files, ledgers, and small tools; can walk/stand for 2 hours and sit for 6

hours during an 8-hour workday; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but cannot climb ropes or ladders; and can perform simple routine work not with the public." (Tr. 18.) In making such a determination, the ALJ reviewed, *inter alia*, the following evidence: (1) Denney and his wife's testimony at the hearings regarding Denney's "emotional problems" and symptoms (Tr. 19-20); (2)  VA treatment records dated September 2007 in which Denney: (a) indicated his wife wanted him to get some treatment because of his bad attitude and anger outbursts, (b) stated "that his only counseling experience had been a single visit to a psychologist, a visit with which he had not been particularly happy," and (3) was diagnosed with post-traumatic stress disorder ("PTSD") that was listed as "stable"  (Tr. 20; *see* Tr. 470-80); (3) VA progress notes from 2006 and 2007 that routinely showed that Denney denied he was experiencing any anhedonia or depression (Tr. 24; *see* Tr. 409 (June 19, 2007), 426 (March 6, 2007), 444 (Jan. 2, 2007), 447 (Dec. 28, 2006), 453 (Dec. 6, 2006); (4) VA progress notes dated August 2008 in which Denney reported that his medications had helped his anger management issues (Tr. 25; *see* Tr. 641); (5) treatment notes dated in February 2008 in which Erika Navarro, M.D. ("Dr. Navarro"), *inter alia*, (a) diagnosed Denney with PTSD and major depression, (b) assessed a global assessment of functioning ("GAF")[6] score of 55,[7] (c) noted there was no evidence of a thought process disorder, delusional thinking, internal preoccupation, or significant psychomotor abnormalities, and (d) observed that Denney's insight

---

[6] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM–IV).

[7] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  DSM-IV at 34.

and judgment were good and his speech was normal (Tr. 26; *see* Tr. 536-59); (6) VA progress notes from March and July 2009 and January 2010 showing that Denney had "medication compliance issues" and that the "evidence as a whole shows that the claimant has of his own accord not been taking his psychotropic medications as prescribed" (Tr. 27; *see* Tr. 664, 683, 746); (7) the inconsistencies "between the testimony offered by Mrs. Denney and her written statements" and the fact that Mrs. Denney's written statements show that Denny can perform simple repetitive work not directly around the public and that Denney engages in a variety of daily activities of both a physical and mental nature (Tr. 27-29); (8) the State Agency Medical Consultant ("SAMC")'s opinion to the extent it shows that Denney has an RFC "consistent with an ability to perform full-time work activity on a sustained basis"[8] (Tr. 29; *see* Tr. 481-94); and (9) an April 2008 psychological report in which James David, Psy.D. ("Dr. David"), opined that: (a) Denney's mental impairments caused a "moderate" effect on occupational functioning and a moderate-to-severe impact on social functioning, (b) Denney had a GAF score of 55, and (c) Denney "would likely do better in a more isolated type of work setting" (Tr. 24-26; *see* Tr. 570-75).  In addition, the ALJ stated:

> Based on all of the evidence of record, the undersigned finds that the claimant can perform and maintain the limited range of sedentary work described above.  This finding is supported by the following evidence. . . .
>
> . . . .

---

[8] In a Psychiatric Review Technique ("PRT") dated December 14, 2007, SAMC Richard L. Gann, M.D. ("SAMC Gann"), opined that Denney had no restriction of activities of daily living; mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 491.)  Based upon the medical records before SAMC Gann, he opined that Denney did not have any severe impairments.  (Tr. 481, 493.)

Also, the claimant is able to perform some significant daily activities. He is currently caring for two of his children while his wife works. He mows the lawn; and he testified in November 2009 that he constructed a "man cave" in his back yard (a place where he can seek solitude). These activities are in excess of the sedentary exertional level.

(Tr. 21-22.)

### 1. Dr. Thomas

Denney first argues that the ALJ erred in only giving weight to parts of Dr. Thomas'

August 2008 Medical Source Statement and "reject[ing] the more severe limitations." (Pl.'s Br.

at 11.) Denney claims that the ALJ is not allowed to "pick and choose" some conclusions of Dr.

Thomas, while rejecting others. (Pl.'s Br. at 12-15.) Denney states that it was inconsistent for

the ALJ to reject some of Dr. Thomas' opinions in the Medical Source Statement as being

unsupported by objective medical findings but then give weight to other portions of Dr. Thomas'

opinions. (Pl.'s Br. at 13.) Denney argues that there is objective medical evidence in the record

that supports Dr. Thomas' opinions, including the opinions of Dr. David, Dr. Zartman, and

Jeffrey Dodds, Ph.D. ("Dr. Dodds").[9] (Pl.'s Br. at 15-17.) In addition, Denney states that he was

---

[9] Dr. Dodds, a licensed clinical psychologist who examined Denney on March 26, 2099 at the Dallas VA Medical Center, diagnosed Denney with chronic and severe PTSD and gave him a GAF rating of 42. (Tr. 682-87.) In addition, Dr. Dodds stated, *inter alia*:

As noted by a previous examiner in April 2008, pt shows evidence of a mood disorder secondary to his ongoing medical problems and resultant physical disability, all of which is more likely than not related to his service-related injuries in Iraq. As noted previously, pt mostly appears to be able to care for himself independently and perform ADLs, however he has significant physical limitations 2/2 his injuries and this precludes him from working as a police officer or as a jailer, which has been his normal line of work. Pt has noted significant frustration and depression over this issue.

(Tr. 686-87.) In the examination, Denney reported, *inter alia*, that he had "continued to take Citalopram but discontinued Divalproex due to side effect of daytime drowsiness." (Tr. 683; *see* Tr. 27.)

never off Celexa, as implied by the ALJ, and it was selective reading to "call into question a report for a single instance of non-compliance." (Pl.'s Br. at 17.)  In addition, Denney argues it was improper for the ALJ to rely on her own lay opinion regarding Denney's ability to function at home. (Pl.'s Br. at 17.)

The regulations, rulings, and relevant case law reflect establish that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions she has made. *See generally* 20 C.F.R. § 416.927(b), (d); *see also* SSR 96-6p; 1996 WL 374180, at *2 (S.S.A. July 2, 1996).  While opinions on the ultimate issue of disability status are reserved to the ALJ, she must consider all medical opinions. 20 C.F.R. § 416.927(b), (d)(1).  Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.  20 C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983).  However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790.  Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

As to the opinions of Dr. Thomas, the ALJ stated:

In June 2008, Lea [sic] Thomas, M.D., the claimant's treating psychiatrist, diagnosed the claimant with post-traumatic stress disorder and a major depressive disorder. The claimant's psychotropic medications in July 2008 were Citalopram (for mood) and Zolpidem Tartrate (for sleep).

In August 2008, Dr. Thomas completed a Medical Source Statement in which she opined, using a rating system from "1" through "4," that the claimant had ("1") no significant limitations in his ability to carry out very short and simple instructions; to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, to deal with problems involving several concrete variables in or from standardized situations; or to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations. She opined further that the claimant had ("2") some loss of ability to interact appropriately with the general public and to ask simple questions or request assistance, but was still capable of consistently performing these tasks independently, appropriately, effectively, and on a sustained basis. Dr. Thomas opined further that the claimant was ("3") not precluded from performing the following activities (but that the degree of limitation involved was such as to interfere seriously with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis): applying commonsense understanding to carry out simple one-or two-step instructions and to deal with standardized situations with occasional or no variables in or from these situations encountered on the job; maintaining attention and concentration for extended periods (approximately 2-hour intervals); performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination or proximity to others without being unduly distracted by them; completing a normal work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; and coping with normal work stresses without exacerbating psychologically based symptoms. Dr. Thomas—who did not offer a single "4" rating (the most severe) or offer any objective medical findings to support any of her opinions—indicated that the limitations had existed since at least September 11, 2007.

. . . .

In determining the claimant's mental residual functional capacity, the undersigned has carefully considered the opinions of Dr. Thomas, the claimant's treating psychiatrist at the VA. Dr. Thomas has been treating the claimant for mental symptoms since around March 2008, and her aforementioned opinions are "medical opinions," as defined by regulation. . . .

. . . .

In the instant case, the opinions of Dr. Thomas are, on the whole, deemed credible only to the extent consistent with this decision. In some instances, the undersigned essentially agrees with Dr. Thomas, as when the latter opined that the claimant has experienced no significant loss of ability in some areas such as the ability to carry out very short and simple instructions, and, generally, when Dr. Thomas offered ratings of "1" or "2" in the Medical Source Statement. However, where Dr. Thomas's opinions reflect number "3" limitations, limitations in excess of those found herein, the opinions are not accepted. In this regard, the undersigned notes that Dr. Thomas provided absolutely no objective medical findings or signs to support any of her individual assessments. The opinions can be accepted only to the extent that they are supported by objective evidence in the record; and of those opinions that reflect a level-"3" severity, none is supported by objective evidence in the medical record. In fact, in one progress note, from June 2008, even Dr. Thomas herself mentioned no symptoms or medical signs would rise to the "3" level she described in her Medical Source Statement. And in June 2008, Dr. Thomas reported that the claimant was well groomed and had only a "mildly" restricted affect with no evidence of psychosis, delusions, or any danger to self or others. The claimant himself reported at that time, "I feel a lot more calm on this medication" (apparently Citalopram). Moreover, as will be evident from the summary below of Mrs. Denny's written statements, the claimant's daily activities reflect abilities that correlate with a "1" or, at most, "2," as described in Dr. Thomas's Medical Source Statement.

. . . .

In November 2009, just prior to the second hearing in this matter, Dr. Thomas completed interrogatories sent her by claimant's attorney. In her responses, Dr. Thomas indicated that since August 2008, there had been no substantial change in the claimant's impairment, symptoms, and limitations that would cause her to revise her assessment from August 2008. She stated that her previous answers from August 200[8] still applied.

13

In a letter from June 2010, Dr. Thomas stated that the claimant continued to struggle with mood symptoms: irritability, being on guard, isolative behaviors, insomnia, intrusive memories of his combat experiences, emotional numbing, and anxiety. Dr. Thomas added that the claimant's symptoms continued to have a negative impact on his overall functioning—that he experienced difficulty interacting with his wife and children, that he had limited social interactions, and that he had difficulty maintaining employment. She offered a poor-to-guarded prognosis. Dr. Thomas's letter from June 2010 does not change the aforementioned assessment of the claimant's mental residual functional capacity. Note is made that Dr. Thomas did not opine that the claimant is disabled, and her statement that the claimant has difficulty maintaining employment does not address the multitude of different jobs (especially a great many unskilled jobs) in the national economy. Moreover, there are some inconsistencies between the substance of Dr. Thomas's letter and other evidence of record. For example, though Dr. Thomas stated that the claimant has insomnia, other evidence indicates that the claimant has complained of sleeping too deeply (see below). Also, though Dr. Thomas stated that the claimant has difficulties interacting with his children, testimony at the hearings shows that the claimant has been the primary caretaker of two of his children; and there is no evidence that he has experienced any mental or emotional (or physical) difficulty tending to their care. It follows that he is not as limited in social functioning as he has alleged.

        . . . .

The finding herein that the claimant can perform simple repetitive work not directly around the public is supported by Mrs. Denney's written statements, in that she stated that her husband can pay attention "as long as normal"; that he finishes what he starts; that he follows written instructions "well"; that he follows spoken instructions "well"; that he interacts with others "often"; that he does not have "any problems getting along with family, friends, neighbors, or others"; and that he gets along "well" with authority figures. As with the earlier written statements, these written statements are inconsistent with the testimony at the hearing, testimony that portrayed the claimant as someone who has anger outbursts and significant difficulty getting along with others. The undersigned gives greater weight to the written statements—which reflect generally normal mental functioning—than to the testimony at the hearing. The undersigned also notes that these written statements support the conclusions herein that limited weight should be given the aforementioned number "3" assessments offered by Dr. Thomas in the Medical Source Statement.

(Tr. 21, 25-28 (internal citations omitted).)

In this case, it is clear that the ALJ thoroughly reviewed and analyzed Dr. Thomas' opinions, including her opinions in the August 2008 Medical Source Statement. The ALJ adopted Dr. Thomas' opinions to the extent such opinions were supported by Dr. Thomas' objective medical findings and other objective medical findings in the record. However, as noted above, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. Contrary to Denney's claims, the ALJ did not just "pick and choose" those opinions of Dr. Thomas that supported the ALJ's findings. Instead, the ALJ thoroughly explained why she was accepting some of Dr. Thomas' opinions and rejecting others. There is other objective evidence in the record that was considered by the ALJ that indicates Denney was not as severely limited by his mental impairment in all categories as opined by Dr. Thomas in the August 2008 Medical Source Statement, including the SAMC's opinion in the December 14, 2007 Psychiatric Review Technique, some of the other VA treatment notes, Dr. Thomas' own treatment notes, Dr. David's opinions in the April 2008 psychological report, and the testimony (both oral and written) of Denney and his wife. The ALJ's decision is not subject to reversal, even if there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Because there is substantial evidence in the record

that supports the ALJ's RFC determination and analysis of Dr. Thomas' opinions, remand is not required as to this issue.

### 2. Dr. Zartman

Denney also argues that the ALJ erred by failing to include the limitations found by Dr. Zartman in the RFC determination even after giving "significant weight" to Dr. Zartman's opinions. (Pl.'s Br. at 22-23, 27.) Dr. Zartman, a clinical neuropsychologist, examined Denney on November 20, 2008 for a neuropsychological evaluation. (Tr. 27; *see* Tr. 648-55.) In the "Summary & Impressions" section of the evaluation notes, Dr. Zartman stated:

> Mr. Denney reported three instances of altered mental state while serving a one year tour in Iraq from November 2005 – November 2006 but denied any lasting cognitive or neurological sequelae from these events. Currently, he reported problems with prospective memory, general forgetfulness, concentration, distractibility, multi-tasking, slowed processing speed, and increased cognitive fatigue. Psychologically, he was diagnosed with PTSD after returning from Iraq at Fort Hood and has been followed by the MH Trauma team since fall 2007. He reported an improvement in PTSA symptomatology, especially his quality of sleep, over the past 6 months. However, he feels that he still needs help and has made plans to start individual or group psychotherapy. . . . Interview and test data revealed a pleasant but somewhat anxious, disinhibited, and tangential man who tends to minimize his level of stress and associated psychological distress. Cognitive testing revealed intact cognitive abilities, overall. He was noted to have mild problems with reproducing a complex figure which may be related to inattention to details or problems with vision. Additionally, while below expected performances were noted in the pts verbal learning abilities, his retention of previously learned material was within normal limits suggesting problems with encoding versus a true memory deficit. Psychological testing suggests Mr. Denney is continuing to experience a mild to moderate level of distress which is primarily manifested through physical and cognitive symptoms. While it appears that Mr. Denney did experience at least one concussive event, it does not appear that his cognitive complaints are directly connected to ongoing TBI etiology. Instead, his scores are more consistent with someone under significant stress and associated psychological distress.

> Additionally, there is some suspicion of undiagnosed, mild ADHD which
> tends to be exacerbated under times of stress.

(Tr. 653.) In addition, in a section titled "Patient Recommendations," Dr. Zartman also stated:

> -Mr. Denney is encouraged to attend all of his scheduled Mental Health
> appointments. Additionally, he is encouraged to begin individual or group
> psychotherapy.
>
> -To help cope with attentional difficulties, the following strategies may be
> helpful:
>
> o Work/read in short increments (i.e., 15-20 minutes) interspersed with brief
>   periods of activity (e.g., 5 minutes of walking around);
> o Break down complex assignments into smaller steps, completing each one before
>   moving onto the next;
> o Minimize potentially distracting stimuli by working/reading alone or in a quiet
>   room;
> o Allow extra time to complete projects (i.e., double or triple the time expected for
>   completion);
> o Check and double-check work;
> o Write down and organize information to-be-remembered;
> o Utilize a day planner/calendar;
> o Ask for repetition of important information and repeat it back to ensure
>   completeness and accuracy; and
> o Take a few extra seconds to make a "mental note" of new information and to
>   repeat it several times to facilitate encoding for later retrieval.

(Tr. 653-54.)

> As to Dr. Zartman's evaluation, the ALJ stated the following in her decision:

> The undersigned notes that the Appeals Council referenced a
> psychological evaluation (new evidence) from November 2008. The evaluation
> was performed by Andrea Zartman, Ph.D., a clinical neuropsychologist, who
> concluded that the claimant was experiencing a "mild to moderate level of distress
> [emphasis added]," primarily manifested through physical and cognitive
> symptoms. Dr. Zartman noted that the claimant reportedly carried a 50% VA
> disability rating, but that the claimant acknowledged improvement in the past 6
> months in the symptoms from his post-traumatic stress disorder. Dr. Zartman's
> opinions, which are given significant weight, are consistent with the limitation
> herein to simple routine work not with the public. (The restriction to no work

17

with the public is due in part to the alleged hearing loss). As for the claimant's depression, such is not so severe as to preclude simple routine work, a conclusion that is supported in part by the claimant's daily activities, especially as reported by Mrs. Denney (see below).

(Tr. 27 (internal citations omitted).)

In this case, the ALJ thoroughly discussed Dr. Zartman's opinions, gave them "significant weight," and explained his reasons for doing so. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")). Dr. Zartman's opinions provide support for the ALJ's RFC determination limiting Denney to performing simple routine work not with the public. Contrary to Denney's contentions, however, the ALJ did not err in failing to include in the RFC determination the limitations contained in the "Patient Recommendation" section of Dr. Zartman's examination. Such limitations were merely "strategies" that Dr. Zartman recommended to Denney to help him cope better with his attentional difficulties. Dr. Zartman's "limitations" were not given in the context of an RFC determination and are not reflective of Dr. Zartman's opinion as to Denney's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. Consequently, the ALJ was not required to include such limitations in the RFC determination and remand is not required as to this issue.

### 3.  Substantial Evidence

Denney also argues that the ALJ erred in his RFC determination because there is no evidence supporting such determination since the ALJ rejected many of the opinions of Dr.

Thomas, failed to include limitations from Dr. Zartman, and relied on Dr. David's opinion, which did not include any functional limitations. However, as noted above, the ALJ is responsible for assessing a claimant's RFC based on all of the relevant evidence in the record. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir.2005); 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See id; Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug.19, 2005). In this case, the ALJ properly considered the evidence as a whole, utilizing not only parts of Dr. Thomas' RFC assessment, but also the other medical evidence in the record that included the SAMC's opinion in the December 14, 2007 Psychiatric Review Technique, opinions from several doctors, and the testimony and written statements of Denney and Denney's wife to determine Denney's RFC and the effect Denney's impairments had upon his ability to work. The ALJ discussed the evidence in the record in making her RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See,* e.g., *Muse*, 925 F.2d at 790. Because there is substantial evidence in the record, as discussed above, that supports the ALJ's RFC determination, the Court concludes that remand is not required as to this issue.[10]

---

[10] Denney also claims that the ALJ erred in relying on vocational expert ("VE") testimony at Step Five that was based on a defective hypothetical question because such question did not incorporate limitations opined by Dr. Zartman. However, because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment (Tr. 78), the ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue,* No. 3:10-CV-1413-BK, 2011 WL 540299, at

19

**B. VA Disability Determination**

Denney also argues that the ALJ erred in disregarding the VA's disability determination that ultimately found Denney was 50% disabled due to his PTSD. (Pl.'s Br. at 19-21.) Denney claims that the reasons the ALJ gave for disregarding such rating were insufficient and erroneous. (*Id.*)

As to Denney's VA disability determination, the ALJ stated the following:

> At the initial hearing, the claimant testified that he was injured in May 2006 while stationed with the Army in Iraq. Specifically, he sustained a rib injury when a machinegun in an Army vehicle hit his chest, resulting in long-term costochondritis. He testified further that he is also unable to work due to a right knee injury (in basic training); hearing loss with tinnitus (sometimes making it hard for him to understand others); and post-traumatic stress disorder with depression. He testified that he holds a 50-percent disability rating with the VA.
>
>       . . . .
>
> . . . The undersigned notes too that the Board recommended giving the claimant only a 10-percent rating, though information from a later VA [medical] record shows other impairments with disability ratings as follows: removal of ribs, 10%; impaired hearing, 10%; limited flexion of knee (10%), a foot condition (0%), and post-traumatic stress disorder (30%) (Exhibit 7F, p. 38). In March 2010, the VA increased the claimant's rating for post-traumatic stress disorder to 50%, with a combined rating for all impairments of 60%; however, as claimant's attorney observed, the rating decision itself is not available (Exhibit 12F). Absent[] the VA's rating decision, the increased rating for post-traumatic stress disorder is of little evidentiary value.
>
> In any event, Social Security regulation 20 CFR 404.1504 states that a decision by any nongovernmental agency or any other governmental agency about whether a claimant is disabled or blind is based on that agency's rules and is not the Social Security Administration's decision as to whether a claimant is disabled or blind. The Social Security Administration makes its determinations and decisions based on Social Security law. Regulation 20 CFR 404.1504 states

---

*7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments).

> further that a determination made by another agency that a claimant is disabled or blind is not binding on the Administration. Such applies to the aforementioned Army assessments/ratings, which are given little weight to the extent they are inconsistent with the residual functional capacity established herein.

(Tr. 18, 23-24.)

"A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000)); *see* SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006) ("A VA rating of 100% disability should have been more closely scrutinized by the ALJ."); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). However, pursuant to Fifth Circuit precedent, a VA disability determination is entitled to great weight unless the ALJ adequately explains the valid reasons for not doing so. *Chambliss*, 269 F.3d at 522. "Where the ALJ disagrees with VA's disability findings, there is no reversible error as long as the record reflects consideration of those findings." *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935 (S.D. Tex. 2004).

In this case, it is clear that the ALJ did consider the VA determination and chose to not give it controlling weight because the ALJ did not have the VA's rating decision, which would have explained the reasons for the VA's decision. Without such rating decision, the ALJ did not have any explanation for why the VA made such a determination and, as noted above, the criteria

applied to determining disability is different between the VA and the SSA.[11]  The ALJ, as set

forth above, gave specific reasons for and discussed the evidence in the record in ultimately

determining that Denney was not disabled.  The ALJ referred to such reasons in determining that

the VA determination was not entitled to controlling weight.  Because the ALJ complied with her

duty in considering the VA determination and explaining valid reasons for not giving it great

weight, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file

specific written objections in the United States District Court to the United States Magistrate

Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the

party has been served with a copy of this document.  The United States District Judge need only

make a de novo determination of those portions of the United States Magistrate Judge's proposed

findings, conclusions, and recommendations to which specific objection is timely made.  *See* 28

U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a

proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error

or manifest injustice, from attacking on appeal any such proposed factual findings and legal

---

[11] Moreover, in this case the VA's rating was not of a rating of *total and permanent* disability as the VA's disability determination did not find that Denney was unemployable or considered to be totally and permanently disabled as a result of his service-connected disabilities.  (Tr. 760.)  Thus, even if the ALJ had relied on it, it would not have supported a decision that Denney was totally disabled.

22

conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 21, 2013** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 7, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

23